**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Rachel Geman (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com

**SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
550 California Street, Suite 910
San Francisco, California 94104
(415) 500-6800
jsaveri@saverilawfirm.com

*Counsel for Kadrey Plaintiffs and the Proposed Class*

*(Additional counsel on signature page)*

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com
Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@buttericklaw.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

MICHAEL SULLIVAN, et al.,

Plaintiffs,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:26-cv-06793-VC

**Related Cases:**

No. 3:25-cv-09579-VC
No. 3:26-cv-02333-VC
No. 3:26-cv-03725-VC
No. 3:26-cv-04053-VC
No. 3:23-cv-03417-VC

**_KADREY_ PLAINTIFFS' OPPOSITION TO _SULLIVAN_ PLAINTIFFS' MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL**

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..... 2
A. Current or Soon-to-Be Proposed Cases Before The Court. ..... 2
1. *Kadrey* Consolidated Class Action ..... 2
2. *Elsevier* and *Hobbs* Class Actions ..... 4
3. *Sullivan* Class Action ..... 5
III. ARGUMENT ..... 6
A. The Motion is Premature ..... 6
B. The Motion's Premise of Purported Conflicts Further Demonstrates that the Motion is Premature, and The Premise is Otherwise Flawed ..... 7
1. Applicable Standard ..... 7
2. *Sullivan* Has Not Shown Conflicts ..... 9
a. The *Sullivan* counsel are prematurely focused on one type of analysis related to one use and one harm. ..... 9
b. The *Sullivan* counsel are incorrect to effectively assume that the potential need for class members to share proceeds is a conflict. 10
C. Other Rule 23(g) Considerations Further Support Denial. ..... 12
IV. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re 5-Hour Energy Mktg. v. Innovation Ventures, LLC*,
No. CV 13-4001-PSG, 2013 WL 12134144 (C.D. Cal. Nov. 8, 2013) ....................................8

*Aberin v. Am. Honda Motor Co., Inc.*,
No. 16-CV-04384-JST, 2017 WL 3641793 (N.D. Cal. Aug. 24, 2017)..................................8

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..............................................................................................................8

*Bartz v. Anthropic*, *Anthropic PBC*,
No. 4:24-cv-05417-AMO (N.D. Cal.) .....................................................................1, 10, 11, 12

*Chabon v. Meta Platforms, Inc.*,
No. 4:23-cv-04663-VC (N.D. Cal. Sept. 12, 2023) .................................................................2

*Eashoo v. Iovate Health Scis. U.S.A., Inc.*,
No. CV 15-01726-BRO, 2015 WL 12696036 (C.D. Cal. May 26, 2015)................................9

*Elsevier Inc. v. Meta Platforms*,
No. 26-cv-03689-PKC (S.D.N.Y.)..................................................................................... *passim*

*Elsevier Inc. v. Meta Platforms*,
No. 3:26-cv-11415 (N.D. Cal.). ......................................................................................... *passim*

*Farnsworth v. Meta Platforms, Inc.*,
No. 3:24-cv-06893-VC (Oct. 1, 2024).......................................................................................2

*In re Glumetza Antitrust Litig.*,
336 F.R.D. 468 (N.D. Cal. 2020)..............................................................................................8

*Hobbs v. Meta Platforms, Inc.*,
No. 1:26-cv-04314-PAE (S.D.N.Y.)..................................................................................4, 5, 6

*Huckabee v. Meta Platforms, Inc.*,
No. 3:23-cv-06663-VC (Oct. 17, 2023)......................................................................................2

*Imran v. Vital Pharms., Inc.*,
No. 18-CV-05758-JST, 2019 WL 1509180 (N.D. Cal. Apr. 5, 2019) .................................6, 7

*In re Meta Pixel Healthcare Litig.*,
No. 22-cv-3580-WHO, 2022 WL 18399978 (N.D. Cal. Dec. 21, 2022)................................13

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ................................................................................................7, 8

*In re OpenAI ChatGPT Litig.*,
No. 23-CV-03223-AMO, 2024 WL 1834368 (N.D. Cal. Apr. 26, 2024) .............................6, 7

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)...................................................................................................................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re Roundup Prods. Liab. Litig.*,
No. 16-MD-02741-VC, 2020 WL 1983256 (N.D. Cal. Apr. 27, 2020) ..............................7, 10

*Saladin v. McGraw-Hill Glob. Educ. Holdings, LLC*,
No. 17-cv-01028 (N.D. Iowa)..........................................................................................13

*Sullivan, et al. v. OpenAI Foundation, et al.*,
No. 1:26-cv-6966, 1:25-md-3143 (S.D.N.Y.)...................................................................5

**Court Rules**

Fed. R. Civ. P. 23 ...............................................................................................................6

Fed. R. Civ. P. 23(a)(4).......................................................................................................7

Fed. R. Civ. P. 23(g) ..................................................................................................... *passim*

**Other Authorities**

*Newberg on Class Actions* § 3.58 (5th ed. 2011)................................................................7

## I. INTRODUCTION

Plaintiffs in *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC ("*Kadrey*") respectfully submit this Opposition to the pending Motion to Appoint Interim Lead Counsel (the "Motion") in *Sullivan v. Meta Platforms, Inc.*, No. 3:26-cv-06793-VC (N.D. Cal.), Dkt. 77 ("*Sullivan*"). There is no showing of any functional necessity or benefit to appointing interim counsel for textbook authors. Yet that is precisely what Rule 23(g)(3) requires. Because there is no immediate, case-specific relief or imminent deadline that requires the Court to change the status quo by weighing in—prematurely—on the leadership aspirations of a potential subclass, the *Sullivan* Motion should be denied.

Indeed, this Court repeatedly has made clear its view about next steps in the Meta AI cases: the uploading claims are headed to summary judgment, and, following the Court's ruling on that issue, all claims will head to the Ninth Circuit to consider Meta's downloading, uploading, and training on copyrighted works. Against this backdrop, the *Sullivan* plaintiffs have shown no conflicts, let alone fundamental conflicts, as to the relevant issues, and premature appointment of interim class counsel for a subclass of textbook authors threatens to create roadblocks to effective case management. The *Sullivan* plaintiffs' primary basis for saying conflicts are inevitable is the class settlement in *Bartz v. Anthropic PBC*, No. 4:24-cv-05417-AMO (N.D. Cal.) ("*Bartz*"), yet that case shows the opposite. In *Bartz,* where authors and publishers were part of one class (and where all rightsholders to a particular work shared the proceeds of the settlement value of that work), *Sullivan* counsel supported the settlement. More importantly, textbook authors did as well.

None of this is to assume or idealize a frictionless world between all rightsholders about every issue, or to suggest that the exact settlement structure in *Bartz* is the only one imaginable regardless of facts. But this case is about the common conduct of a defendant that the entire creative industry has an interest in holding accountable, and any discussion of ultimate allocation occurs against that backdrop. For these primary reasons, and others addressed below, the *Sullivan* plaintiffs' Motion should be denied without prejudice.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

At the September 25, 2026 conference, the Court raised a number of questions about the pending claims (distribution/uploading piracy, downloading piracy, market dilution via indirect substitution) and various complaints (class and individual) in the Meta AI actions.[1] *Sullivan* is the last-filed of seven proposed class action copyright lawsuits against Meta Platforms, Inc., filed three years after the first-filed class action complaint in the *Kadrey* consolidated actions. Appointing interim counsel for a subclass of textbook authors for a market dilution claim that may or may not be certified would, as a practical matter, affect the case management options available to the Court in all pending actions. Thus, the *Kadrey* plaintiffs provide some brief table-setting that is relevant to the Motion before turning to its specifics.

### A. Current or Soon-to-Be Proposed Cases Before The Court.

It will likely soon be the case that there are eight related cases before this Court: one consolidated class action (first filed in 2023), three additional class actions (filed in 2026), and four individual matters (first filed in late 2025). This is apart from the large number of individual cases that Mr. Roche stated would be forthcoming "on behalf of . . . more than a thousand additional authors." *See* September 25 CMC Tr. 24:9–20. *Kadrey* is working cooperatively with the individual cases, and those cases have benefitted tremendously from *Kadrey*'s work, including joining *Kadrey*'s expert report on torrenting.

#### 1. *Kadrey* Consolidated Class Action

Counsel first filed *Kadrey* in July 2023. Three other class cases were subsequently filed and consolidated into *Kadrey*.[2] After the Court's partial summary judgment order in June 2025, seven similar cases have been filed against Meta, ranging from four cases brought on behalf of individual plaintiffs (like Entrepreneur Media) to proposed class actions (like *Elsevier Inc. v. Meta*

[1] *Kadrey*'s ongoing consideration of class certification issues is reflected*, inter alia*, in Dkt. 668 (Plaintiffs' Administrative Motion for Class Discovery and Class Certification Briefing).

[2] *See Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal. July 7, 2023); *Chabon v. Meta Platforms, Inc.*, No. 4:23-cv-04663-VC (N.D. Cal. Sept. 12, 2023) (consolidated with Kadrey on Dec. 5, 2023); *Huckabee v. Meta Platforms, Inc.*, No. 3:23-cv-06663-VC (Oct. 17, 2023) (consolidated with *Kadrey* on July 5, 2024); *Farnsworth v. Meta Platforms, Inc.*, No. 3:24-cv-06893-VC (Oct. 1, 2024) (consolidated with *Kadrey* on Oct. 18, 2024).

*Platforms*, No. 3:26-cv-11415 (N.D. Cal.) ("*Elsevier*")). *Sullivan* is, indeed, one of the three additional class cases pending against Meta. The other two, like *Kadrey*, assert direct and contributory copyright infringement claims (along with DMCA claims like the one the Court adjudicated in *Kadrey*) on behalf of a proposed class of "[a]ll legal or beneficial owners of any book, article, journal, or other written work" that Meta uploaded and/or downloaded via torrenting, or "otherwise reproduced in connection with its LLM(s)." *Kadrey* Dkt. 702, Fourth Amend. Consol. Compl. ("FACC"), ¶ 128.[3]

In October 2024, the Court appointed Boies Schiller Flexner LLP ("BSF") as interim lead counsel, with Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") as additional counsel. *Kadrey* Dkt. 232.[4] Since appointment, *Kadrey* counsel has doggedly pursued multiple copyright infringement claims against Meta and uncovered previously unknown and unprecedented torrenting and distribution of copyrighted works by a single entity in the United States. *See, e.g.*, Mot. for Leave to File FACC, *Kadrey* Dkt. 658 at 3–5.

Other class plaintiffs have benefitted and continue to benefit from *Kadrey*'s unearthing, aggressive pursuit of, and expertise in connection with these issues. *See*, *e.g.*, *Elsevier* Dkt. 1 ¶¶ 69, 88–90, 93–110, 115, 132 (asserting allegations based on the factual record that *Kadrey* developed); *Sullivan* Dkt. 1 ¶¶ 46–59, 67–70, 72–73 (same). Indeed, Sullivan's counsel readily admits that he based his allegations on the *Kadrey* "unsealed record in this District concerning Meta's torrenting of the LibGen and Anna's Archive shadow libraries." Mot. at 8.

The parties in *Kadrey* already exchanged opening expert reports on October 2, 2026—notably, reports joined by all of the plaintiffs in the other related individual actions, including Entrepreneur Media—with respect to the plaintiffs' torrenting expert. And *Kadrey* plaintiffs will file their opening summary judgment briefs on December 16, 2026. *Kadrey* Dkt. 839.

---

[3] The only new cause of action in *Sullivan* is a claim for contributory infringement against Meta's CEO, Mark Zuckerberg, in the proposed class actions, although that claim was dismissed voluntarily in *Sullivan* after this Court questioned its inclusion at a CMC. *See* Aug. 14, 2026 CMC Tr. at 37:19–40:14.

[4] The Court made this appointment over a year after *Kadrey* was filed, and after denying an earlier motion by the Joseph Saveri Law Firm as premature. *See* Dkts. 92 (Minute Order) & 96 (hearing transcript).

### 2. *Elsevier* and *Hobbs* Class Actions

On May 5, 2026, five publishers—Elsevier Inc., Cengage Learning, Inc., Hachette Book Group, Inc., Macmillan Publishers, McGraw Hill LLC—and an author filed a case in the Southern District of New York that is largely overlapping with *Kadrey* and that was subsequently transferred to this District. *Elsevier* Dkt. 101. On May 22, 2026, two authors filed another overlapping case, *Hobbs v. Meta Platforms, Inc.*, No. 1:26-cv-04314-PAE (S.D.N.Y.) ("*Hobbs*"). On October 5, 2026, the *Hobbs* court granted the parties' proposed order to transfer venue to this District. *Hobbs* Dkt. 35.

The *Elsevier* complaint proposes a class of "[a]ll legal or beneficial owners of registered copyrights, in whole or in part, for any book possessing an International Standard Book Number (ISBN) or journal article possessing a Digital Object Identifier (DOI) or International Standard Serial Number (ISSN)" that Meta reproduced or distributed without authorization via torrenting, or "in connection with the development and/or training of a Llama model." *Elsevier* Dkt. 1 ¶ 167. As noted in the hearing regarding the motion to transfer, this definition overlaps with the definition set forth in *Kadrey*. *Elsevier* Sept. 15, 2026 Hr'g Tr. 32:18–25.

*Hobbs* likewise proposes an overlapping class of "All legal or beneficial owners of registered copyrights, in whole or in part, for any book possessing an International Standard Book Number (ISBN) or journal article possessing a Digital Object Identifier (DOI) or International Standard Serial Number (ISSN), that Meta, without such owner's authorization, (1) reproduced by downloading during torrenting and/or copying of web scrapes; or (2) distributed or made available during torrenting; or (3) reproduced in connection with the development and/or training of a Llama Model." *Hobbs*, Dkt. 26 ¶ 125.

Notably, *Sullivan* counsel sought to intervene in *Elsevier* and the motion was denied as premature. *Elsevier* Dkt. 56 ("The motion is denied without prejudice to renewal when, as and if the Court sets a schedule on a motion for class certification").

### 3. ***Sullivan* Class Action**

*Sullivan* is the last-filed action, filed on July 2, 2026—more than three years after *Kadrey*. *Sullivan* Dkt. 1. The *Sullivan* plaintiffs are seven textbook authors who seek to represent a class of "textbook authors who hold legal or beneficial ownership of a United States copyright in a textbook that Meta downloaded, copied, reproduced, uploaded, and/or otherwise distributed via BitTorrent, or otherwise used to train its Llama models." *Sullivan* Dkt. 1, Compl., ¶ 108. The *Sullivan* plaintiffs thus propose a nearly identical class definition to *Kadrey*'s, but limited to textbook authors. As noted above, the *Sullivan* plaintiffs benefitted from the work that the *Kadrey* plaintiffs have undertaken. *Sullivan* Compl., ¶¶ 46–59, 67–70, 72–73. Their case is essentially a repackaged version of the *Kadrey* cases, with a few individual facts regarding one of their infringement claims (and a dropped claim against Mark Zuckerberg).

*Sullivan* counsel are similarly trying to benefit from work by other plaintiffs' counsel, including the *Kadrey* plaintiffs' counsel, in other AI copyright infringement cases. For example, *Sullivan* counsel filed a complaint on behalf of the same group of textbook authors against OpenAI, which is part of an MDL being litigated by some of *Kadrey*'s counsel, and responded to the MDL court's order to show cause why their case should not be stayed by making nearly identical arguments to those they make here. *Sullivan, et al. v. OpenAI Foundation, et al.*, No. 1:26-cv-6966, 1:25-md-3143 (S.D.N.Y.), Dkt. 1939. The MDL court rejected their position and stayed the case. *Id.*, Dkt. 1967. Thus, in the face of a well-developed and pending action against an AI developer for similar claims, other courts have not found the purportedly individualized concerns the *Sullivan* counsel has raised warrant disrupting existing case structures. *See id*.

On September 22, 2026, the *Sullivan* plaintiffs filed their Motion, seeking appointment of Slarskey LLC as interim class counsel for the putative textbook-author subclass, with Gaw Poe LLP and Archstone Law Group, P.C. serving as an Executive Committee. *Sullivan* Dkt. 77. The Motion's central argument is that textbook authors are purportedly uniquely positioned so as to warrant designated class counsel. Mot. at 2. Since each of the other proposed classes includes all

beneficial and legal copyright owners, granting the *Sullivan* plaintiffs' motion would create a *de facto* subclass that overlaps with the proposed classes in *Kadrey*, *Elsevier*, and *Hobbs*.

## III. ARGUMENT

### A. The Motion is Premature

Rule 23(g) permits a court to designate interim class counsel "during the pre-certification period if necessary to protect the interests of the putative class." Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment. There is no immediate, case-specific relief or imminent deadline that warrants 23(g) consideration of interim class counsel for a proposed subclass that is part of each of the earlier-filed class cases against Meta. The *Sullivan* plaintiffs have not made any showing that appointment of interim class counsel would allow them to do anything that cannot already be done—they can litigate their market harm theories just as they say they are doing now.

On the flip side, there is a risk that early appointment could have a negative impact on the schedule and case management options available in other actions against Meta before this Court. Summary judgment briefing in *Kadrey* begins at the end of this year, and in *Sullivan*, summary judgment and class certification will proceed together in 2028 absent extensions, and possibly only after certain proceedings in the Ninth Circuit. *Sullivan* Dkt. 81 (accepting *Sullivan* plaintiffs' proposed briefing schedule as set forth in joint case management statement, *Sullivan* Dkt. 80). The *Elsevier* and *Hobbs* cases have only just been transferred to this Court. *Elsevier* Dkt. 101; *Hobbs* Dkt. 36. Each pleads a class that contains textbook authors. The *Kadrey* action also pleads a class that includes textbook authors (and publishers). To weigh in on the appointment of interim lead counsel now would only complicate an already complicated landscape of competing class actions.

Courts routinely deny premature requests under Rule 23(g), and this case should be no exception. *See, e.g.*, *In re OpenAI ChatGPT Litig.*, 2024 WL 1834368, at *1 (N.D. Cal. Apr. 26, 2024) ("[T]he Court concludes that approval of [interim class counsel] is premature and denies the motion without prejudice."); *Imran v. Vital Pharms.*, 2019 WL 1509180, at *10 (N.D. Cal. Apr. 5, 2019) (denying motion to appoint interim class counsel as premature). The *Sullivan* Motion contains none of the hallmarks justifying Rule 23(g). Like *Imran*, there are related proposed class

actions before this Court with overlapping class definitions, and the *Sullivan* Motion "do[es] not indicate that these appointments are required to resolve 'any rivalry between the [involved] firms.'" 2019 WL 1509180, at *10. Before a movant has demonstrated that appointing interim class counsel will resolve rivalry between firms with competing proposed class cases or uncertainty as to respective roles, appointment of interim class counsel is premature. *See, e.g., id.*; *In re OpenAI*, 2024 WL 1834368, at *1 (denying motion to appoint interim class counsel as premature where no evidence of rivalry or uncertainty between firms with overlapping cases).

**B. <u>The Motion's Premise of Purported Conflicts Further Demonstrates that the Motion is Premature, and the Premise is Otherwise Flawed</u>**

Textbook authors, like all authors and publishers, have important interests tied to their profession. But that does not mean that appointing separate interim class counsel is necessary at this stage to vindicate these interests. *See In re Roundup Prods. Liab. Litig.*, No. 16-MD-02741-VC, 2020 WL 1983256, at *1 (N.D. Cal. Apr. 27, 2020) (Rule 23(g)(3) permits appointment of interim class counsel only where it is "necessary to protect the interests of the putative class") (citing advisory committee's note to 2003 amendment). While the *Sullivan* plaintiffs allege an "inherent" conflict between publishers and authors—and textbook authors in particular—regarding "what each is owed if that liability is established," any such conflict is neither a basis for appointment of interim class counsel nor substantively correct. Mot. at 14.

**1. Applicable Standard**

Courts evaluate the types of conflicts the Motion claims to exist at class certification, as part of the adequacy-of-representation inquiry. As the Ninth Circuit has explained, "'[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.' A conflict is fundamental when it goes to the specific issues in controversy." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting *Newberg on Class Actions* § 3.58 (5th ed. 2011)).

There is no such fundamental conflict here. To the contrary, *Sullivan* concedes that "textbook authors and their publishers are aligned on Meta's liability." Mot. at 14. All affected

copyright holders—authors and publishers alike—seek to hold Meta accountable for its widespread piracy, torrenting, and use of copyrighted works in LLM training (which in turn also affects the outputs). *See Kadrey* Dkt. 702; *Sullivan* Dkt. 1; *Elsevier* Dkt. 1; *see also In re Online DVD-Rental*, 779 F.3d at 943 (affirming no conflict between class representative and absent class members where "there were no structural differences in the claims of the class representatives and the other class members"); *see also In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 482–83 (N.D. Cal. 2020) ("Should any absent class members prefer a different damages model, they remain free to opt-out of the class.").

All legal and beneficial copyright owners—authors and publishers—have an interest in the same claim. Authors and publishers have the exact same interest in prosecuting these claims and in maximizing recovery, and this case does not raise the issues of immature torts and limited funds present in the cases the *Sullivan* plaintiffs cite. *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) ("for the currently injured, the critical goal is generous immediate payments," but "[t]hat goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future"); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). By contrast, when there are no structural differences in the claims of the representatives and the other class members, conflicts are not found. *See In re Online DVD-Rental*, 779 F.3d at 943.

And, it follows that where "it does not appear that the members of the various proposed classes have different interests or needs . . . [or] that there are different types of claims that could best be pursued by separately-appointed counsel[,]" Rule 23(g) motions are premature. *In re 5-Hour Energy Mktg. v. Innovation Ventures, LLC*, 2013 WL 12134144, at *2 (C.D. Cal. Nov. 8, 2013) (denying appointment of extended leadership structure where "the member cases in this litigation assert closely-related claims on behalf of similar and overlapping proposed classes"); *see also Aberin v. Am. Honda Motor Co., Inc.*, 2017 WL 3641793, at *2 (N.D. Cal. Aug. 24, 2017) ("The fact that there is 'more than one Plaintiff group,' is irrelevant if Plaintiffs' interests are not divergent or dissimilar."); *Eashoo v. Iovate Health Scis. U.S.A., Inc.*, 2015 WL 12696036, at *7 (C.D. Cal. May 26, 2015) (declining to appoint extended leadership structures where different

sections of the same broader class "allege the same wrong and injury based upon the same set of common facts").

**2. *Sullivan* Has Not Shown Conflicts**

*Sullivan* counsel raise two basic issues: *first,* the Motion claims that the *Kadrey* plaintiffs will not seek to develop evidence of "functional-work market" dilution, "[s]ubstitution inside the instructional setting," and evidence into the specific market for textbooks as relates to "new editions, and ancillary and supplemental materials[.]" Mot. at 9–10. *Second,* the Motion asserts that there may be disputes between textbook authors and publishers over how to split the proceeds of a settlement for a book in which they have shared interests. The *Kadrey* plaintiffs address each in turn.

**a. The *Sullivan* counsel are prematurely focused on one type of analysis related to one use and one harm.**

The Motion posits that the textbook market is or will be more diluted than other markets due to Meta's Llama models. *There is zero evidentiary support for this proposition.* While the Motion points to portions of the Court's partial summary judgment order relating to the measurement of market dilution, the discussion in the order is no more specific to textbooks than to any other type of copyrighted book. *Id.* at 10–11. Nor do the *Sullivan* counsel address the other uses and harms here. *Id.*

Notably, *Sullivan* does not (and presumably would not) argue that textbook authors face unique market harms in connection with downloading or uploading, where the harm is substitutive, uniform, and shown via common evidence. September 25 CMC Tr. at 17:17–19:21 ("[A]t least for the distribution claim based on the torrenting of pirated works, that is the claim that is most procedurally advanced. . . . That is, in fact, a paradigmatic class case."). And *Sullivan* does not address the fact that there is a licensing market for training, the LLM companies' desire to acquire all copyright protected books, or the relationship of licensing to outputs. In glossing over distinct usages and harms (including those presently before the Court) in a misplaced attempt to show

purportedly unique interests, *Sullivan* counsel ignores relevant analysis and shows why their Motion is premature at this phase of the case.

**b. The *Sullivan* counsel are incorrect to effectively assume that the potential need for class members to share proceeds is a conflict.**

*Sullivan* counsel contends that authors and publishers are "opposed on what each is owed if that liability is established." Mot. at 14. This is incorrect and premature. It is a hypothetical issue that will only come into play (if at all) when a settlement or judgment is obtained. Those concerns relate to the distribution of the settlement, not the prosecution of the case. Mot. at 7, 14. *See generally In re Roundup*, 2020 WL 1983256, at *1 (denying motion to appoint interim class counsel over exposure-only claimants to participate in negotiations between defendant and the currently sick where "no evidence that these plaintiffs are competing over diminishing assets insufficient to discharge the potential liability").

If those issues arise, the Court will have tools to address them, as the *Bartz* settlement record shows. In *Bartz*, where Lieff Cabraser serves as Co-Lead Class Counsel, the settlement process treated textbook authors the exact same way as all other rightsholders by allocating settlement payments based on their contractual rights. *Bartz* Dkt. 619 at 7 (motion for final approval noting that "[t]he POAD [Plan of Allocation and Distribution] honors contractual terms"). That allocation occurred only after *Bartz* class counsel engaged in a thorough factfinding that included input and cooperation from author and publisher trade groups and their counsel—including Mr. Slarskey himself. *Bartz* Dkt. 401 at 9–10. As *Bartz* counsel explained in their September 22, 2025 supplemental preliminary approval briefing, they coordinated with interested author and publisher groups to create the Notice Plan, Claim Form, and POAD. *Id*.

Specifically, "[t]he [Authors] Guild and Class Counsel have also coordinated with the Textbook and Academic Authors Association (TAA), both directly and through its counsel at Slarskey LLC, and they have provided valuable feedback on the distribution process and forthcoming proposed Claim Form." *Id*. In creating the POAD, Class Counsel and the interested groups, including TAA, "reviewed scores of author-publisher agreements to propose and assess

potential non-mandatory default rules for the claims process to ensure that they reflect recurring terms in publishing agreements and allow any diverging contractual terms to be honored." *Id.* at 10.

As further explained to the *Bartz* court, "[a]fter discussion with stakeholders—including on the authors' side the Textbook and Academic Authors' Association directly and via communications with author coordination counsel and counsel representing the TAA . . . —Class Counsel determined that contracts for educational works varied too much to suggest a default." *Id.* at 25. All *Bartz* class members—including textbook authors—will receive settlement awards consistent with their contractual rights. *Id.* at 1 ("Class Counsel's goal in proposing this plan of notice and distribution were to make a process that . . . respects pre-existing contractual relationships[.]"). The *Bartz* settlement allocation process occurred with the active participation of textbook author membership groups (the Authors Guild and TAA) and counsel for textbook authors, including Mr. Slarskey. *Compare Bartz* Dkt. 513-2 ¶ 3 (December 22, 2025 declaration by David Slarskey that he "worked with TAA in support of the preliminary settlement, and to assist TAA in assuring that authors are properly informed of their rights and obligations with respect to the proposed settlement") *with* Mot. at 7 ("[T]extbook authors in *Bartz* did not have their own counsel to develop their own unique infringement and damages theories."). Judge Alsup and Judge Martinez-Olguín both reviewed and approved the *Bartz* POAD at preliminary approval and final approval, respectively.

To be sure, to the extent there are disputes between publishers and authors (or between publishers or between authors), as in many settlements, there is a structure to resolve them. If the parties' own discussions, as facilitated by the settlement administrator, do not result in agreement, class members may avail themselves of a special master. *Bartz* Dkt. 680 (final approval order) at 6–7. Thus, whatever disputes exist are handled within the four corners of the settlement.[5]

[5] By the time class certification may be ripe in this case, there likely will be public information on the outcome of the claims process.

*Bartz* demonstrates that post-liability allocation of damages with textbook authors can proceed based on their contractual rights—and enjoy nearly universal class member support. In *Bartz*, there were only 350 opt-outs and 54 objections. *Id.* at 6. The order granting final approval to the settlement noted that "[t]he Class's response was overwhelmingly favorable: the claims rate has reached at least 91.3 percent of Works." *Id.* at 5. Further, the court approved of the allocation of settlement funds to education works "determined by contracts or publishing agreements" and the process by which any disputes may be resolved through a special master. *Id.* at 6. In addition, *Bartz* shows that any discovery on who holds the right to each work will come from authors and publishers themselves, not from Meta. Simply put, the contracts will not change based on whether textbook authors have separate counsel.

But even if *Bartz* did not exist, the possibility of allocation disputes does not justify creating a separate leadership structure now, before liability has been established and before any recovery is at stake. *See* Manual for Complex Litig., § 10.221 (4th ed. 2004) ("Committees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making.").

### C. <u>Other Rule 23(g) Considerations Further Support Denial</u>

The *Kadrey* counsel appreciate the work of all counsel working to advance the interests of class members but respectfully suggest that, if the Court were to reject the argument that the Motion is premature and consider the merits of the Motion, *Sullivan* counsel has not satisfied the Rule 23(g) considerations on the record before the Court.

Courts assessing proposed interim class counsel apply the same standards as for class counsel at certification. *See In re Meta Pixel Healthcare Litig.*, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022). Those mandatory factors include: (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Here, the investigation appears to consist of *Sullivan* counsel's review of subset of docket materials developed in *Kadrey*. Mot. at 8 ("Before filing, counsel reviewed the unsealed record in this District concerning Meta's torrenting of the LibGen and Anna's Archive shadow libraries[.]"). That is, this does not appear to be an independent investigation.

With respect to experience, while the collective set of lawyers proposed to serve as interim lead counsel or executive committee members bring different backgrounds (including copyright law), Slarskey LLC appears to lack the demonstrated class action track record that this litigation demands. The only case that Mr. Slarskey points to for class experience, *Saladin v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. 17-cv-01028 (N.D. Iowa), was in fact an individual breach of contract lawsuit. Mot. at 11. This is no disrespect to these experienced lawyers or to their representation of their clients, but instead an application of the relevant factor in the context of an expensive and complicated case.

Finally, Rule 23(g)(1)(A)(iv) requires assessment of "the resources that counsel will commit to representing the class." The resource question is unclear given that the *Sullivan* plaintiffs did not address it beyond asserting they expended the funds to review a discrete portion of an existing record.

## IV. CONCLUSION

There is no functional necessity or benefit to a premature appointment of the *Sullivan* counsel as interim class counsel for a subclass on overlapping claims in several earlier-filed class cases pending before this Court. *Kadrey* plaintiffs thus respectfully request that the Court deny without prejudice *Sullivan* counsel's Motion for Appointment of Interim Lead Counsel as premature and unsupported.

Dated: October 9, 2026

By: */s/ Maxwell V. Pritt*

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser (SBN 083151)
Daniel M. Hutchinson (SBN 239458)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000
ecabraser@lchb.com
dhutchinson@lchb.com

Rachel Geman (*pro hac vice*)
Sean Petterson (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, New York 10013-1413
(212) 355-9500
rgeman@lchb.com
spetterson@lchb.com

Betsy A. Sugar (*pro hac vice*)
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
(615) 313-9000
bsugar@lchb.com

**SAVERI LAW FIRM LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
550 California Street, Suite 910
San Francisco, California 94104
(415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
(323) 968-2632
mb@buttericklaw.com

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Bryan L. Clobes (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
135 S. LaSalle Street, Suite 3210

**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice*)
333 Main Street
Armonk, NY 10504
(914) 749-8200
dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Jesse Panuccio (*pro hac vice*)
1401 New York Ave, NW
Washington, DC 20005
(202) 237-2727
jpanuccio@bsfllp.com

David L. Simons (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 749-8200
dsimons@bsfllp.com

*Interim Lead Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Chicago, IL 60603
(312) 782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com

**DICELLO LEVITT LLP**
Amy Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
James Ulwick (*pro hac vice*)
10 North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David Straite (*pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
dstraite@dicellolevitt.com

**COWAN DEBAETS ABRAMS & SHEPPARD LLP**
Scott J. Sholder (*pro hac vice*)
60 Broad Street, 30th Floor
New York, NY 10004
(212) 974-7474
ssholder@cdas.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*